```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------
In the matter of the Application of

LIQUOR SALESMEN'S UNION LOCAL 2D
PENSION FUND,
                                              MEMORANDUM AND ORDER
                    Petitioner,
                                              12-CV-2786 (KAM)(MDG)
For an Order to compel a deposition
and discovery from,

Bank of America, N.A.,


                    Respondent.

----------------------------------------
```
**MATSUMOTO, United States District Judge:**

On June 4, 2012, Petitioner Liquor Salesmen's Local 2D Pension Fund ("Petitioner" or the "Fund") filed its Verified Petition (ECF No. 1); proposed Order to Show Cause (ECF No. 2); Memorandum of Law in Support (ECF No. 3); and the Affirmation of J. Warren Mangan, Esq. in Support (ECF No. 4) as to why Petitioner's request to Bank of America, N.A.[1] ("BOA" or "Respondent") for discovery prior to commencement of an action related to a certain bank account should not be granted. The court has considered Petitioner's request pursuant to Federal Rules of Civil Procedure 27 and 34 and other applicable federal

---

[1] As Bank of America, N.A. noted in its objections to the Verified Petition, the entity originally named in the Verified Petition, "Bank of America Corporation," is incorrect and the Petition should have named "Bank of America, N.A." as respondent. (ECF No. 11, Respondent's Objections at 1 n.1) The Court thus directs the Clerk of Court to amend the caption in the above-action accordingly.

and state rules and regulations. For the reasons stated below, Petitioner's request is DENIED.

## I. BACKGROUND

Petitioner is an "employee benefit plan," within the meaning of Sections 3(1)-(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(1)-(3), and 1132(d)(1), and is a multiemployer employee plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). (ECF No. 1, Pet. ¶ 3.) Petitioner's principal office, where the Fund itself is administered, is located in Brooklyn, New York. (*Id*.) The Fund's purpose is to provide pension benefits to its eligible participants, on whose behalf their employers had made contributions to the Fund. (*Id*. ¶ 4.)

Respondent BOA is a banking and financial services corporation headquartered in Charlotte, North Carolina. (*Id*. ¶ 5.) BOA has a nationwide presence, including in the counties comprising the Eastern District of New York. (*Id*.) As discussed below, the Fund filed its Verified Petition (the "Petition") and proposed Order to Show Cause in furtherance of its attempt to obtain from BOA the identity of the current account holders (the "John Doe Account Holders") of a certain BOA bank account (the "John Doe Account") maintained in Boca Raton, Florida.

Specifically, one of the Fund's plan participants, Mr.

Mortimer Abrams, a resident of Florida, has been entitled to receive a monthly, defined pension benefit from the Fund in the sum of $377 per month since September 1, 1989. (*Id.* ¶ 7.) On or about March 24, 2008, Mr. Abrams authorized the Fund to automatically deposit his monthly benefit check into the bank account he maintained at BOA's branch located in Boca Raton, Florida. (*Id.* ¶ 8.) On or about January 23, 2012, however, the Fund discovered through an internal reconciliation check that: (1) Mr. Abrams had still been receiving paper checks at his Florida residence between April 2008 and December 2011; and (2) the Fund's own bank, JPMorgan Chase, had been continuously processing direct deposit checks for the benefit of Mr. Abrams into the John Doe Account during that same time period, even though Mr. Abrams was not the owner of the John Doe Account. (*Id.* ¶ 9.) The Fund's Trustees were advised of these "double benefit payments" and authorized the commencement of an investigation as well as the commencement of an ERISA action. (*Id.* ¶ 10.) The Fund further avers that it expects to be a party to any resulting future ERISA action, but that such ERISA action is unable to be brought presently. (*Id.*)

The Fund thereafter contacted Mr. Abrams' spouse (who has power of attorney over his accounts due to Mr. Abrams' recent onset of Alzheimer's disease), who confirmed that Mr.

Abrams had received monthly benefit paper checks between April 2008 and 2011, which were deposited into Mr. Abrams' BOA bank account. (*Id*. ¶ 11.) Mrs. Abrams knew nothing of the separate direct deposits being sent to the John Doe Account, however. (*Id*.) The Fund asserts that it needs the John Doe Account Holders' identities and account information to "complete its investigation of its ERISA claims by properly identifying potential defendants," and to support its claim that "there has been a wrongful (possibly fraudulent) deposit and retention of its funds" into the John Doe Account. (ECF No. 4, Mangan Affirm. ¶ 3; ECF No. 12, Petitioner's Reply at 4.) BOA, however, has refused the Fund's request to disclose the John Doe Account Holders' identities, citing privacy restrictions imposed by federal banking laws, such as the Gramm-Leach Bliley Act ("GLBA"), 15 U.S.C. §§ 6801, *et seq*. (ECF No. 1, Pet. ¶ 12; ECF No. 11, Resp. Obj. at 2.) Thus, the Fund requests an Order compelling BOA to provide pre-complaint testimony regarding the John Doe Account Holders' identities and general account information.

      The court held a show-cause hearing regarding the Fund's Petition on June 7, 2012, at which counsel for the Fund and BOA were present. (*See* ECF No. 6.) The primary issue discussed was whether BOA could insist that a notice/opt-out

procedure[2] be followed before disclosing the John Doe Account Holders' identities to the Fund. Counsel for the Fund also acknowledged that the Fund had not followed Rule 27's directive to provide respondent BOA with twenty-one days' notice of its intent to seek pre-complaint discovery.

On June 14, 2012, at the court's direction, BOA submitted objections to the Petition on that issue. (ECF No. 11, Respondent's Objections.) The Fund replied to BOA's objections on June 18, 2012, indicating that it is particularly opposed to the notification aspect of BOA's proposed disclosure protocol. (ECF No. 12, Petitioner's Reply at 4.)

## II. DISCUSSION

The court must consider whether the Fund is entitled to pre-complaint discovery under Federal Rule of Civil Procedure 27.[3] Although generally disallowed, the Fund may be entitled to pre-complaint discovery[4] under Rule 27 if, after filing a

---

[2] Pursuant to the Gramm-Leach Bliley Act, banks such as BOA ordinarily cannot disclose confidential account information to non-affiliated third parties (such as the Fund) without providing the account holders with notice of the intended disclosure and a period within which to object to that disclosure. *See* 15 U.S.C. §§ 6801, *et seq*.

[3] The court assumes, without deciding, that the ERISA statutes provide subject matter jurisdiction over the instant Petition. *See Jackson v. Good Shepherd Servs.*, 683 F. Supp. 2d 290, 293 n.12 (S.D.N.Y. 2009) (noting statutes can provide subject matter jurisdiction over Rule 27 petition).

[4] Although Rule 27's title, "Depositions to Perpetuate Testimony," refers only to depositions, the body of the Rule establishes that, upon a verified petition filed in the district "where any expected adverse party resides" and upon twenty-one days' notice to each expected adverse party, "the court may issue orders like those authorized by Rules 34 and 35," regarding the production of documents and mental and physical examinations, respectively.

verified petition in the district court for the district where any expected adverse party resides and providing twenty-one days' notice to any expected adverse party, it can show: (1) that it expects to be a party to an action cognizable in a court of the United States, but the action is unable to be brought presently; (2) the subject matter of the expected action and the petitioner's interest in such an action; (3) facts which the petitioner seeks to establish through the proposed testimony and the reasons for desiring to perpetuate that testimony at this time; (4) the names or description of the expected adverse parties and (5) the names and addresses of the witnesses to be examined and the substance of the testimony petitioner expects to obtain from those witnesses.  Fed. R. Civ. P. 27(a)(1) and (2).  If the court finds that perpetuating the testimony may prevent a failure or delay of justice, the court may order appropriate orders to allow the discovery.  Fed. R. Civ. P. 27(a)(3).

The court has discretion to grant discovery pursuant to Rule 27.  *Mosseller v. United States*, 158 F.2d 380, 382 (2d. Cir. 1946).  Rule 27 is not, however, a substitute for the broader, post-complaint discovery available under Rule 26 and

---

Fed. R. Civ. P. 27(a)(3); *see also In re Ingersoll-Rand Co.*, 35 F.R.D. 122, 124 (S.D.N.Y. 1964) (noting that written discovery can be ordered under the auspices of Rule 27).

should be used only in special circumstances to preserve testimony which otherwise might be lost. *In re Yamaha Motor Corp., U.S.A.*, 251 F.R.D. 97, 99-100 (N.D.N.Y. 2008). Significantly, the Advisory Committee Notes to Rule 27 cite *Arizona v. California*, 292 U.S. 341 (1934), in which the Supreme Court explained that one of the factors required to allow a bill of equity for the perpetuation of testimony was "the danger that [the testimony] may be lost by delay." 292 U.S. at 347–48. It is thus generally understood that a successful Rule 27 petition must establish three elements: "First, they must furnish a focused explanation of what they anticipate any testimony would demonstrate. Such testimony cannot be used to discover evidence for the purpose of filing a complaint. Second, they must establish in good faith that they expect to bring an action cognizable in federal court, but are presently unable to bring it or cause it to be brought. Third, petitioners must make an objective showing that without a Rule 27 hearing, known testimony would otherwise be lost, concealed or destroyed." *In re Yamaha,* 251 F.R.D. at 99 (quoting *In re Allegretti*, 229 F.R.D. 93, 96 (S.D.N.Y. 2005)); *see also Arizona*, 292 U.S. at 347-48.

In this case, the Fund has satisfied the first element and sufficiently explained to the court what it seeks.

Regarding the second element, the court has doubts whether the Fund is actually presently unable to bring its putative ERISA claim. Most significantly, however, with regard to the third element, the court finds no basis in the Fund's submissions to support a showing that the requested materials would be lost or destroyed if BOA is not ordered to produce it now, before a complaint has been filed.

The Fund has not established any basis for showing that, as required by the third factor, known testimony would otherwise be "lost, concealed or destroyed" if the instant Petition is not granted. *See In re Yamaha,* 251 F.R.D. at 99. As noted above, Rule 27 was enacted to provide parties with an equitable means to preserve evidence that would otherwise be destroyed, not a short-cut to full discovery. *See, e.g., In re Allegretti*, 229 F.R.D. at 96 (citing *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir. 1972)). Therefore, common fact patterns satisfying this element have included geographical or jurisdictional constraints, a deponent's advanced age or illness, or actual destruction of evidence. *See, e.g., Mosseller*, 158 F.2d at 382 (deponent's unfavorable medical condition); *General Bd. of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, NO. 06-cv-3669, 2006 WL 3479332, at *4 (E.D.N.Y. Nov. 30, 2006) (Boyle, M.J.) (requested data would be

8

destroyed by respondent in the ordinary course of its business after 90 days); *In re Campania Chilena de Navegacion*, No. 03-cv-5382, 2004 WL 1084243, at *4 (E.D.N.Y. 2004) (Pollack, M.J.) ("extraordinary circumstances" where foreign national witnesses were leaving the United States within 24 hours); *In Re Town of Amenia*, 200 F.R.D. 200, 203-04 (S.D.N.Y. 2001) (deponent's advanced age and recent heart attacks).

By contrast, the Fund has not alleged any facts showing that the John Doe Account Holders' identities or account information would be lost (or are even in danger of being lost) without the requested discovery. Thus, the Fund's request for pre-action discovery of the John Doe Account Holders' identities must be denied under Rule 27. *See Jackson,* 683 F. Supp. 2d at 293-94 (denying Rule 27 petition because no showing of "sufficient risk" that requested materials would be lost otherwise); *Norex Petrol. Ltd. v. Access Indus., Inc.*, 620 F. Supp. 2d 587, 591 (S.D.N.Y. 2009) (denying Rule 27 pre-complaint deposition where future deposition would be "difficult" due to Hague Convention protocol, but would not "be lost" to petitioner); *In re Yamaha*, 251 F.R.D. at 100 (denying Rule 27 application in absence of, *inter alia*, reasons why requested testimony would be lost without pre-complaint deposition).

Nonetheless, the Fund relies on *In re Alpha*

*Industries*, *Inc*., 159 F.R.D. 456 (S.D.N.Y. 1995), asserting that the fact that it "must delay in bringing its ERISA action to recover the Pension Fund's money until receiving the information sought from BOA is sufficient" to satisfy the loss-of-evidence element of Rule 27. (ECF No. 3, Petitioner's Mem. at 4.) In *Alpha Industries*, the district court considered the Rule 27 request of a manufacturer of Alpha-brand jackets to depose a company that shipped and distributed Alpha jackets in Japan. 159 F.R.D. at 456. The petitioner alleged that a Lanham Act violation was occurring either through the respondent's use of counterfeit Alpha-brand jackets, or through the respondent's wrongful receipt of Alpha jackets from one of petitioner's authorized distributors, who were contractually prevented from distributing Alpha jackets in Japan. The respondent argued that Rule 27 was not a means to determine whether a cause of action exists and against whom. *Id*. The district court found, however, in granting the petition that the petitioner's inability to discern the proper defendant rendered it unable to file a complaint under Rule 11, and, hence, the petitioner satisfied the inability-to-sue aspect of Rule 27. *Id*. at 457. The court also noted that unless petitioner was able to identify the wrongdoer, there was nothing to prevent further wrongful exports of petitioner's goods, "which would be a failure or

delay of justice." *Id*. Moreover, the court held that a showing that the requested information was in danger of being lost or destroyed was "'advisable, but not required'" according to commentators, and that the "'danger of loss attendant upon all evidence through lapse of time' will generally suffice" under Rule 27 where the petitioner "must delay bringing suit until receiving the information sought." *Id*. (citation omitted). The *Alpha Industries* court also cited *Mosseller*, 158 F.2d 380 (2d Cir. 1946), for the proposition that while a showing that an injured party might die, although made, was not "essential" where suit could not be brought immediately. *Id*.

*Alpha Industries*, however, is not binding on the court and does not represent the majority view, which does require a specific showing of loss of evidence to satisfy Rule 27. The *Alpha Industries* holding conflates the inability-to-sue and loss-of-evidence elements of the Rule and has, thus, been seriously questioned in this circuit and beyond. *See, e.g.*, *In re Yamaha*, 251 F.R.D. at 100 (declining to follow *Alpha Industries* and noting that majority view requires a specific showing of loss of evidence); *In re Vioxx Prods. Liab. Litig.*, No. 08-1068, 2008 WL 1995098, at *5 (E.D. La. May 6, 2008) (declining to follow *Alpha Industries* as an incorrect statement of law and noting that "[c]ourts have routinely disagreed" with

11

its holding); *In re Ford*, 170 F.R.D. 504, 508 (M.D. Ala. 1997) (disagreeing with *Alpha Industries*); *In re Sitter*, 167 F.R.D. 80, 82 (D. Minn. 1996) (specifically rejecting *Alpha Industries*); 6-27 MOORE'S FEDERAL PRACTICE § 27.13 (discussing *Alpha Industries* as a minority-view case and noting that district courts are "surely correct in rejecting *Alpha Industries'* holding" in this respect).

Moreover, the Second Circuit in *Mosseller* did not squarely address the issue of whether a delay in bringing suit obviated the necessity to show a danger of loss or destruction of evidence. 158 F.2d at 381. Rather, the "important question" before the Second Circuit was whether the district court had jurisdiction to grant a Rule 27 petition where the future action to be commenced sounded in admiralty as a tort claim against the United States. *Id*.

Additionally, *Alpha Industries* is distinguishable from the instant case, because the *Alpha Industries* court had facts before it indicating a danger of actual loss of evidence. There, the evidence at issue consisted of trademarked jackets, which were being shipped out of the country absent court intervention. 159 F.R.D. at 457. Likewise, the only case in the Eastern District of New York to grant a Rule 27 petition based on *Alpha Industries*, *General Board of Global Ministries of*

12

Case 1:12-cv-02786-KAM-MDG Document 13 Filed 07/19/12 Page 13 of 18 PageID #: 49

*the United Methodist Church v. Cablevision Lightpath, Inc.,* is distinguishable because there the requested information was going to be destroyed by the respondent in the ordinary course of its business after 90 days. 2006 WL 3479332, at *4. By contrast, the Fund has not alleged or suggested that BOA will destroy or render permanently inaccessible the identities of the John Doe Account Holders or their account information.

Similarly, the other case relied upon by the Fund, *In re Campania Chilena de Navegacion*, is distinguishable for the same reason; there, "extraordinary circumstance" dictated that the subject witnesses, a crew of a foreign ship, were leaving the United States within 24 hours with no foreseeable return date. 2004 WL 1084243, at *4. Again, there are no facts or allegations in case at bar that BOA will destroy or render permanently inaccessible the identities of the John Doe Account Holders. The court thus declines to follow the line of cases holding that a delay in bringing suit, alone, is enough to satisfy Rule 27's purpose to "preserve evidence that might otherwise be lost." *In re Chary,* No. M-23, 1994 WL 177783, at *1 (S.D.N.Y. May 6, 1994).

With respect to the second element required to satisfy Rule 27 – the present inability to sue – the Fund's conclusion that it cannot bring its putative ERISA suit without first

receiving the John Doe Account Holders' identities and account information is problematic. As noted above, it is well-settled that Rule 27 is not a vehicle for general discovery before an action is commenced and should not be used "'to determine whether a cause of action exists, and, if so, against whom the action should be instituted.'" *In re Allegretti*, 229 F.R.D. at 96 (citation omitted) (collecting cases). Although the Federal Rules of Civil Procedure require plaintiffs to identify all the parties to an action and investigate the facts supporting their complaint, most courts have found these requirements do not satisfy Rule 27's letter or spirit, particularly without a showing that the requested information would otherwise be lost. *See, e.g., In re Yamaha,* 251 F.R.D. at 99 (Rule 27 petition's stated purpose of preserving witness testimony as part of petitioner's "on-going investigation" into claim was grounds for denial); *In re Allegretti,* 229 F.R.D. at 96-98 (denying Rule 27 petition because, *inter alia*, petitioners were seeking "not to collect known testimony but to ascertain unknown information" before filing a complaint); *Shuster v. Prudential Sec. Inc.*, No. 91-cv-0901, 1991 WL 102500, at *1 (S.D.N.Y. June 6, 1991) (dismissing Rule 27 petition because "its purpose is to obtain facts in order to frame a complaint"); *In re State of N. C.*, 68 F.R.D. 410, 412 (S.D.N.Y. 1975) ("[P]etitioner is unable to

bring the underlying action because it lacks facts necessary to frame its complaint. It is this very information which the petitioner seeks to gain by this petition. . . . [But a] Rule 27 petition cannot be used for [this] purpose . . . ."); *In re Ingenuity 13, LLC*, No. 11-mc-84, 2012 WL 968080, at *4-6 (N.D. Cal. Mar. 21, 2012) (denying Rule 27 petition to disclose identity of potential defendants and rejecting holding of *General Board of Global Ministries*); *In re Chester Cty. Elec., Inc.*, 208 F.R.D. 545, 547-48 (E.D. Pa. 2002) (Rule 27 cannot be used as a mechanism to draft a complaint or conduct a pre-suit investigation); *In re Ford*, 170 F.R.D. at 508 (Rule 27 was inapplicable because petitioner sought facts necessary to file complaint, rather than to preserve testimony in danger of being lost); *In re Gurnsey*, 223 F. Supp. 359, 360 (D.D.C. 1963) (denying Rule 27 petition that sought to ascertain identity of potential defendants to libel/slander action).

Moreover, the court doubts that the Fund could satisfy the inability-to-sue element of Rule 27 even if the instant Petition is considered in light of Rule 27's equitable purpose. *See, e.g.*, *Pacific Tech. Corp. v. Ehrenwald*, No. 00-cv-2622, 2000 WL 1634393, at *2 (S.D.N.Y. 2000). Even with equitable considerations, courts should "balance the need to discourage the use of Rule 27 as a means to obtaining discovery to see if a

15

cause of action exists and *the need to preserve evidence* that may be highly relevant should an action be commenced." *Pacific Tech.*, 2000 WL 1634393, at *2 (emphasis added).

Here, the Fund has not established any equitable need for the requested information aside from its belief that it needs the John Doe Account Holders' information to "complete its investigation of its ERISA claims by properly identifying potential defendants," and to support its claim that "there has been a wrongful (possibly fraudulent) deposit and retention of its funds" into the John Doe Account. (ECF No. 4, Mangan Affirm. ¶ 3; ECF No. 12, Obj. at 4.) In addition to such grounds having been rejected by most courts, the Fund has not established *why* it cannot presently bring its ERSIA claim or even against whom the claim would be brought. To the extent the Fund has claims against its own bank, JPMorgan Chase, N.A. or Respondent BOA, the Fund has not established why it is presently unable to bring those claims or would be unable to amend its complaints based on later-discovered evidence. With respect to the John Doe Account Holders, the Fund would likely be permitted to proceed by using the "John Doe" pleading method if the ERISA claim was brought in this district. *See, e.g., Kirkland v. City of New York*, No. 06-CV-0331, 2007 WL 1541367, at *11 (E.D.N.Y. May 25, 2007) (noting that use of pseudonyms for defendants,

16

while not encouraged, is permitted where discovery will identify the unknown defendants). Based on BOA's representation that the John Doe Account Holders are Florida residents, however, the Fund might have to follow Florida law to proceed against them, if indeed the John Doe Account Holders are susceptible to an ERISA claim.[5] Thus, even under the more relaxed standard espoused by the cases relied upon by the Fund, the Fund has not established equitable grounds for its petition because there is no need to preserve the requested evidence under the instant circumstances.

---

[5] The type of ERISA claim the Fund could bring against the John Doe Account Holders is unclear, because, as a general matter, ERISA claims lie against plan participants, beneficiaries, or fiduciaries. See 29 U.S.C. § 1132(a), et seq. From the few facts before the court, it does not appear that the John Doe Account Holders fall into any of those categories. See, e.g., Ello v. Singh, 531 F. Supp. 2d 552, 566-67 (S.D.N.Y. 2007) (noting that to be deemed an ERISA fiduciary, a party must, among other things, exercise management, discretionary authority or control over a plan's assets or administration). This uncertainty is, of course, a reason why most courts require a specific showing of danger that evidence would be lost or destroyed in order to justify the uncommon relief of allowing discovery before a complaint establishes jurisdiction.

### III. CONCLUSION

For the reasons discussed above, the Verified Petition of Petitioner Liquor Salesmen's Union Local 2d Pension Fund requesting an order compelling Respondent Bank of America, N.A. to produce information related to a certain John Doe Account is hereby DENIED.  Counsel for the Fund and BOA are hereby directed to confer and inform the court as soon as practicable of the Fund's intended course of action.

**SO ORDERED.**

Dated:   July 19, 2012
         Brooklyn, New York

                                          _____/s/_____  _____
                                          **Kiyo A. Matsumoto**
                                          United States District Judge